IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ARVA ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE THE PROPOSED SPECIFIC CAUSATION TESTIMONY FROM PLAINTFF'S EXPERTS<br><br><br><br>Case No. 2:06-CV-741 TS |

This matter is before the Court on Defendant Crane Co.'s Renewed Motion to Exclude the Proposed Specific Causation Testimony from Plaintiff's Experts. Defendants York International Corporation, Honeywell, Inc., Goulds Pumps, Flowserve Corporation, and Sepco Corporation (collectively "Defendants") have all joined in Crane Co.'s Renewed Motion. For the reasons discussed below, the Court will grant Defendants' Motion.

I.  BACKGROUND

This matter was initially filed in state court by Joseph Alexander Anderson, Jr., and was removed to this Court on September 1, 2006.  Plaintiff's complaint alleged that Mr. Anderson had been diagnosed with asbestos-caused Mesothelioma.  Mr. Anderson died of Mesothelioma on June 7, 2008, and his wife and the executor of his estate, Arva Anderson, was substituted as Plaintiff.  On October 20, 2006, the United States of America Judicial Panel on Multidistrict Litigation issued Conditional Transfer Order 269,[1] which transferred Plaintiff's case to the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Court").

On September 26, 2012, without giving any reasoning for its determination, the Pennsylvania Court issued an order denying Defendant Crane Co.'s Motion to Exclude as moot.[2] On the same day, the Pennsylvania Court issued a Suggestion of Remand, suggesting that the case be remanded to this Court because all discovery had been completed and the case was ready for trial.[3]  On October 12, 2012, a Clerk's Order of Conditional Remand was signed, remanding the case back to this Court for trial and severing all claims for punitive or exemplary damages.[4] Soon thereafter, on December 3, 2012, Defendant Crane Co. filed its Renewed Motion to Exclude the Proposed Specific Causation Testimony from Plaintiff's Experts.

---

[1]*See* Docket No. 143.

[2]Docket No. 270-8.

[3]Docket No. 254.

[4]*Id.*

Plaintiff hired two experts to testify regarding the cause of Mr. Anderson's Mesothelioma. Drs. Barry Horn and Steven Dikman have each submitted expert reports and have been deposed by Defendants in regard to those reports. Before making their reports, both experts reviewed Mr. Anderson's medical records and work history as supplied by Plaintiff's counsel. However, neither expert personally spoke with or examined Mr. Anderson.

Dr. Dikman passed away on November 8, 2012, and Defendants have withdrawn their arguments as to his personal testimony. However, Defendants have not withdrawn their arguments as to the substance of Dr. Dikman's proposed testimony, and continue to seek an order that no expert should be allowed to offer "every exposure" testimony or give specific causation testimony regarding any of Defendants' products. As the substance of Dr. Dikman's report is at issue in the present Motion, it will be considered despite his death.

A.  DR. HORN'S REPORT

Dr. Horn's report consists of a detailed summary of the medical information provided to him, a recitation of Mr. Anderson's work history, and a brief opinion. Dr. Horn opines that "[a]ll of Mr. Anderson's asbestos exposure should be considered a contributing factor in the development of his malignancy. In summary, Mr. Anderson has been diagnosed as having malignant mesothelioma caused by prior occupational and paraoccupational exposure to asbestos."[5] He further opines that "[t]here is only one known cause of malignant mesothelioma in man, and that [is] prior asbestos exposure or exposure to a similar substance called zeolite. . . . [M]any studies have clearly demonstrated that workers exposed to asbestos are at risk for this

---

[5] Docket No. 270-1 Ex. A, at 12.

otherwise rare malignancy."[6]  Dr. Horn later submitted a supplemental report in which he declares that "[t]he mesothelioma was caused by prior exposure to asbestos as outlined in my prior report."[7]

When questioned in his deposition about the basis for his opinions, Dr. Horn affirmed that he "didn't consult anything specific for this case."[8]  Furthermore, when asked specifically if he had any opinions related to Defendant Crane Co.'s products, Dr. Horn testified "[n]o, I have no specific opinions.  I have no information regarding this man's exposure to Crane Co. Products."[9]  Neither Dr. Horn's report nor deposition contains any information regarding Mr. Anderson's exposure to the products of any specific Defendant.

When questioned about whether he needed to know the dose of asbestos dust Mr. Anderson was exposed to in formulating his opinion, Dr. Horn testified "No.  If the exposure is above background, then it increased his risk.  Now, if there are some exposures that are much higher than other exposures, then the higher exposures would contribute a greater risk than lower exposures.  But any exposure above background would increase his risk."[10]  He further explained that

---

[6]*Id.* at 10.

[7]Docket No. 285-7 Ex. D, at 4.

[8]Docket No. 270-2 Ex. 2, at 19.

[9]Docket No. 270-3, at 87.

[10]Docket No. 270-2 Ex. 2, at 27.

> [a]ll chemical carcinogens manifest a dose-dependent relationship. There's, I don't believe there's any dispute anywhere in the literature regarding that issue. The more of a chemical carcinogen you are exposed to, the greater your risk for the development of cancer. This is clearly also true for asbestos; that is, the more asbestos you inhale and retain in your lungs, the greater your risk for developing an asbestos-related disease, and that includes mesothelioma.[11]

B.   DR. DIKMAN'S REPORT

Dr. Dikman's report consists of a brief summary of Mr. Anderson's work and medical history followed by a one paragraph opinion. Dr. Dikman opines as follows:

> Asbestos exposure is well documented to cause malignant mesothelioma. The finding of hyalinized pleural plaquing in the surgical tissue specimen from Mr. Anderson indicates asbestos related pleural disease and confirms that his asbestos exposure was substantial. The radiographic and clinical findings, including the intraoperative appearance, and the microscopic and immunopathologic studies established the diagnosis of malignant mesothelioma. It is my opinion, with a reasonable degree of medical certainty, that Mr. Anderson's malignant pleural mesothelioma was caused by his asbestos exposure.[12]

When asked whether his opinion on causation required a consideration of the frequency of exposures, Dr. Dikman stated that "[i]n some cases, yes, generally I would say yes but in specifically in Mr. Anderson we have high hyalinized pleural plaquing which documents that he had substantial exposure in the past which would cover both frequency and duration."[13] Dr. Dikman later clarified that he didn't have specific information on Mr. Anderson's exposure to

---

[11] *Id.* at 17.

[12] Docket No. 285-7 Ex. B, at 2.

[13] Docket No. 270-2 Ex. 1, at 13-14.

asbestos, stating that he didn't "have specific information as to those types of frequency, duration, and things of that sort."[14]

Additionally, Dr. Dikman testified as follows:

> Q. Did you think that every exposure contributes to the development of this disease?
> A. I would think there is no way of separating every specific exposure, but I would say that, yes, that the aggregate of the exposures did contribute to his disease.
> Q. Let me ask you: Do you believe that every exposure contributes to his disease?
> A. I would say, yes, and then I have no way of separating one exposure from the other. We know this individual, as many individuals, has had substantial exposure to asbestos and they have an asbestos-caused mesothelioma.
> Q. Do you believe that every exposure to asbestos contributes equally to the development of the disease?
> A. I don't know.
> MR. KIELY: Objection.
> Q. Do you believe that the frequency of exposures affects its contribution to the development of disease?
> A. We don't know. We don't know the specific threshold of what is needed to develop mesothelioma. There is no established threshold. And the types and amounts of exposure and duration and frequency is very variable, and it's at all different levels. So there is really no specific duration or amount that's really known to be necessary to cause mesothelioma.[15]

Finally, Dr. Dikman testified that the general population is exposed to asbestos in the ambient air.[16] Dr. Dikman clarified that "the measurements in the air samples in the general population, and air samples have been used to see the incidence in a background population from

---

[14]*Id.* at 18-19.

[15]*Id.* at 46-48.

[16]*Id.* at 126.

nonexposed individuals, and this has never been shown to have a significant increase in the risk for mesothelioma in these background populations."[17]

## II.  RULE 702 AND *DAUBERT*

Defendants do not argue that Plaintiff's experts are not qualified to testify as experts in this matter.  Instead, Defendants seek to exclude any specific causation testimony that the asbestos which caused Mr. Anderson's disease came from their products.  Specifically, Defendants argue that the experts should be precluded from offering testimony that "every exposure" to asbestos is a factual cause of the development of mesothelioma.  Defendants argue that such testimony should be excluded because (1) it is not based on sound scientific principles and should be excluded under *Daubert* and Fed. R. Evid. 702; and (2)  jurisdictions applying a substantial factor causation test should not permit this type of opinion evidence.  As the Court finds that the proposed testimony does not meet the requirements of Rule 702 and *Daubert*, there is no need to consider whether the testimony is appropriate under the substantial factor causation test.

Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[17]*Id.* at 128.

In *Daubert v. Merrell Dow Pharmaceuticals Inc.*[18] and *Kumho Tire Co., Ltd. v. Carmichael*,[19] the Supreme Court interpreted the requirements of Rule 702. "*Daubert* requires a trial judge to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"[20]  "In applying Rule 702, the trial court has the responsibility of acting as a gatekeeper."[21]

"Scientific knowledge . . . 'implies a grounding in the methods and procedures of science' which must be based on actual knowledge and not 'subjective belief or unsupported speculation.'"[22]  "In other words, 'an inference or assertion must be derived by the scientific method . . . [and] must be supported by . . . good grounds, based on what is known.'"[23]  "'Under the regime of *Daubert* . . . a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.'"[24]

---

[18] 509 U.S. 579 (1993).

[19] 526 U.S. 137 (1999).

[20] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1163 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 589).

[21] *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1222 (D. Colo. 1998).

[22] *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999) (quoting *Daubert*, 509 U.S. at 590).

[23] *Id.* (quoting *Daubert*, 509 U.S. at 590).

[24] *Id.* at 783 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)).

"The Supreme Court has provided some guidance for the task of determining scientific validity."[25]  "This inquiry is 'a flexible one,' not governed by a 'definitive checklist or test.'"[26] Some factors to consider are whether the expert's theory or technique: (1) can be (and has been) tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error with standards controlling the technique's operation; and (4) enjoys widespread acceptance in the relevant scientific community.[27]

### III.  DISCUSSION

Plaintiff's experts admit that they do not have any specific information regarding Mr. Anderson's exposure to any of Defendants' products.[28]  They do not appear to think such information is necessary, as their testimony that every exposure Mr. Anderson had to an asbestos fiber contributed to the causation of his disease would imply specific causation regardless of the dose of the exposure or the type of fiber to which Mr. Anderson was exposed.  Under this analysis, all Plaintiff must do at trial is show that Mr. Anderson was exposed to some minimal amount of asbestos from the product of a Defendant at some point in his life, and that Defendant could be found liable for his mesothelioma.  This would be true regardless of whether or not Mr. Anderson was also exposed to significant amounts of highly carcinogenic fibers from one or more of the other Defendants.

---

[25]*In re Breast Implant Litig.*, 11 F. Supp. 2d at 1223.

[26]*Atl. Richfield*, 226 F.3d 1163 (quoting *Daubert*, 509 U.S. at 593).

[27]*Id.*

[28]Docket No. 270-3, at 87; Docket No. 270-2 Ex. 1, at 18-19.

Defendants argue that the testimony of Plaintiff's experts is conjecture that is not based on sound scientific principles or evidence. Therefore, Defendants urge the Court to exercise its gatekeeping powers to exclude this evidence under Rule 702 and *Daubert*. The chief dispute is whether the testimony is based on sufficient facts or data, and whether the testimony is the product of reliable principles and methods.

Recently, in *Smith v. Ford Motor Company*, Judge Dee Benson of this Court thoroughly considered whether Rule 702 and *Daubert* permit expert testimony that "every exposure" to asbestos is a contributing cause to a person's mesothelioma.[29] The Court finds Judge Benson's opinion to be persuasive and well-reasoned.[30] In *Smith*, the plaintiff's expert sought to offer "every exposure" testimony to show that Mr. Smith's mesothelioma was caused by his cumulative exposure to asbestos, with each exposure playing a contributing role, including any exposure he may have had when he changed automobile break pads on several occasions.[31] However, the expert did not have any underlying data on the quantity of fibers found in brakes necessary to cause cancer in a human being.[32]

---

[29] 2013 WL 214378 (D. Utah Jan. 18, 2013).

[30] This Court had previously considered whether to allow testimony similar to the testimony proposed here when presented with the question in the context of a motion in limine in *Larson v. Bondex International, Inc.* 2011 U.S. Dist. LEXIS 79830 (D. Utah July 21, 2011). Without the aid of the extensive briefing provided by the parties to the present case, the Court allowed the testimony. *Id.* at *4.

[31] *Id.* at *1.

[32] *Id.* at *3.

After thoroughly considering the arguments before it, the Court found the expert opinion to be, "as a matter of law, unsupported by sufficient or reliable scientific research, data, investigations or studies, and is inadmissible under Rule 702."[33] The Court found that "the every exposure theory as offered as a basis for legal liability is inadmissible speculation that is devoid of responsible scientific support."[34]

A.    UNDERLYING FACTS AND DATA

Plaintiff's experts are unable to point to any studies showing that "any exposure" to asbestos above the background level of asbestos in the ambient air is causal of mesothelioma. Instead, Plaintiff's experts base their opinion on the fact that scientists have been unable to determine a safe level for exposure to asbestos. Such studies are difficult to perform as mesothelioma often develops as long as between ten and forty years after exposure to asbestos,[35] and scientists have not yet found a way to determine which exposure or fiber(s) caused the mesothelioma. As Dr. Dikman testified, "We don't know. We don't know the specific threshold of what is needed to develop mesothelioma. There is no established threshold. . . . So there is really no specific duration or amount that's really known to be necessary to cause mesothelioma."[36]

---

[33] *Id.* at *2.

[34] *Id.*

[35] Docket No. 285-1, at 25.

[36] Docket No. 270-2 Ex. 1, at 48.

As noted earlier, not only do Plaintiff's experts lack data on the level of exposure to asbestos necessary to cause mesothelioma, they have no information on Mr. Anderson's exposure to Defendants' products, or even the type of asbestos fibers that Defendants' products may contain. All of the experts' data comes from medical reports which demonstrate that, at some point, Mr. Anderson was exposed to asbestos and that the "asbestos exposure was substantial."[37] The experts have no information on whether that substantial exposure had any relation to the remaining Defendants before the Court.

As this Court recently stated in *Smith*, "Rule 702 and *Daubert* recognize above all else that to be useful to a jury an expert's opinion must be based on sufficient facts and data. The every exposure theory is based on the opposite: a lack of facts and data."[38] Plaintiff's experts do not base their opinions on scientific evidence that every exposure to asbestos causes mesothelioma. Instead, their testimony is based on their lack of information sufficient to show the level of exposure which does not create a risk of mesothelioma. This is not reliable enough evidence for the Court to allow it in under the standards of *Daubert* and Rule 702. "Just because we cannot rule anything out does not mean we can rule everything in."[39]

---

[37]Docket No. 285-7 Ex. B, at 2.

[38]2013 WL 214378, at *2.

[39]*Id.* at *3.

B.    PRINCIPLES AND METHODS

"It is well established that a plaintiff in a toxic tort case must prove that he or she was exposed to and injured by a harmful substance manufactured by the defendant."[40] Normally, a plaintiff will rely on its expert to "demonstrate 'the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover.'"[41] Here, however, Plaintiff's experts simply assert that any level of exposure is hazardous to human beings and forego any examination of Mr. Anderson's actual level of exposure.

In support of his proposed testimony that every exposure to asbestos is casual of mesothelioma, Dr. Horn states that mesothelioma is dose-responsive to asbestos exposure.[42] In addition, Dr. Dikman testified that although there is some background level of asbestos to which the general population is exposed, this exposure has not been shown to pose a significant risk of mesothelioma.[43] The experts simply do not have the scientific information to allow them to testify in further detail regarding a dosage that does pose a significant risk of mesothelioma.

Considering the *Daubert* factors for examining a scientific theory, the theory proposed by Plaintiff's experts is troubling. Due to the significant lag between exposure to asbestos and a

---

[40]*Mitchell*, 165 F.3d at 781 (citing *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1106 (8th Cir. 1996); *Wintz By & Through Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir. 1997); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).

[41]*Id.* (quoting *Wright*, 91 F.3d at 1106).

[42]Docket No. 270-2 Ex. 2, at 17.

[43]*Id.* Ex. 1, at 128.

diagnosis of mesothelioma, the theory cannot be easily tested. Plaintiff's experts testified that they have no way of knowing which fibers or which exposure caused the mesothelioma. Similarly, there is no known error rate for this theory. Although Plaintiff has pointed to instances in which people with very little known exposure to asbestos contracted mesothelioma, it is not known if the odds of people with so little exposure contracting mesothelioma is one out of a million or one out of a hundred.

Plaintiff has supplemented the record with numerous scholarly articles and scientific studies in support of the claim that asbestos causes mesothelioma and that there is no known safe exposure to asbestos. However, Plaintiff's experts have pointed to no studies showing that the type of exposure Mr. Anderson had to Defendants' products is likely to cause mesothelioma. Viewed in its most favorable light, the literature shows that any exposure to asbestos *could* cause mesothelioma, but no one knows how likely that is.

Plaintiff has also supplied the Court with the reports and testimony of a core group of experts in similar cases where the experts testified that every exposure to asbestos caused a person's mesothelioma. However, the Court must base its opinion on the facts and testimony presented in this case, rather than on the testimony of experts in other cases. Although the testimony of these experts does indicate that the theory has some acceptance in the scientific community, the Court notes that a growing number of courts have determined that the theory is not proper under *Daubert* and Rule 702, expressing the opinion that the "'any exposure theory is,

at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis.'"[44]

For the reasons stated above, the Court finds that the every exposure theory of causation does not meet the standards set by Rule 702 and *Daubert* and must be excluded. Therefore, Defendants' Motion will be granted.

### IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Renewed Motion to Exclude the Proposed Specific Causation Testimony from Plaintiff's Experts (Docket No. 270) is GRANTED.

DATED  June 24, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[44]*Smith*, 2013 WL 214378, at *5 (quoting *Butler v. Union Carbide Corp.*, 712 S.E.2d 537, 552 (Ga. Ct. App. 2011)).