IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ARVA ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS FOR RECONSIDERATION AND CLARIFICATION<br><br><br><br>Case No. 2:06-CV-741 TS |

This matter is before the Court on Defendant Sepco Corporation's ("Sepco") Motion for Reconsideration, Defendant York International Corporation's ("York") Motion for Summary Judgment, Defendant Goulds Pumps' ("Goulds") Motion for Summary Judgment, and Defendant Crane Co.'s Renewed Motion for Partial Reconsideration and Clarification Regarding its Motion for Summary Judgment. For the reasons discussed more fully below, the Court will deny Defendants' Motions.

1

I.  BACKGROUND

This matter was initially filed in state court by Joseph Alexander Anderson, Jr., and was removed to this Court on September 1, 2006.  Plaintiff's complaint alleged that Mr. Anderson had been diagnosed with asbestos-caused Mesothelioma.  Mr. Anderson died of Mesothelioma on June 7, 2008, and his wife and the executor of his estate, Arva Anderson, was substituted as Plaintiff.  On October 20, 2006, the United States of America Judicial Panel on Multidistrict Litigation ("MDL") issued Conditional Transfer Order 269,[1] which transferred Plaintiff's case to the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Court").

While before the Pennsylvania Court, each of the Defendants filed a motion for summary judgment.  The Pennsylvania Court denied each of these motions in whole or in part in separate opinions on April 27, 2011.[2]  Defendant Crane Co. filed a motion for reconsideration before the Pennsylvania Court, and the Pennsylvania Court denied the motion on September 26, 2012.[3]

On that same day, the Pennsylvania Court issued a Suggestion of Remand, suggesting that the case be remanded to this Court because all discovery had been completed and the case

---

[1] *See* Docket No. 143.

[2] *Anderson v. Ford Motor Co.*, 2011 WL 5505456 (E.D. Pa. Apr. 29, 2011) (order denying Sepco's motion); *Anderson v. Ford Motor Co.*, 2011 WL 5505437 (E.D. Pa. Apr. 29, 2011) (order denying York's motion); *Anderson v. Ford Motor Co.*, 2011 WL 5505462 (E.D. Pa. Apr. 29, 2011) (order denying Crane Co.'s motion); *Anderson v. Ford Motor Co.*, 2011 WL 5505458 (E.D. Pa. Apr. 29, 2011) (order denying Goulds' motion).

[3] Docket No. 268-13.

was ready for trial.[4]  On October 12, 2012, a Clerk's Order of Conditional Remand was signed, remanding the case back to this Court for trial and severing all claims for punitive or exemplary damages.[5]

## II.  LEGAL STANDARD

"[E]very order short of a final decree is subject to reopening at the discretion of the district judge."[6]  Federal Rule of Civil Procedure 54(b) expressly allows for revision of an interlocutory order before entry of final judgment.  Rule 54(b) provides, in pertinent part that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

This inherent power to review is informed by the long-standing rule that an issue decided should remain decided.  However, "[c]ourts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous."[7]  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's

---

[4]Docket No. 254.

[5]*Id.*

[6]*Elephant Butte Irrigation Dist. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008) (internal quotation marks and citation omitted).

[7]*Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) (citing *Furhman v. U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973), *cert. denied*, 414 U.S. 859 (1973)).

position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[8]

Although the Tenth Circuit has not decided whether the law of the case doctrine applies when a court reviews a prior MDL order in the same case, it has generally applied the doctrine in other circumstances where a case has been transferred.[9] As other courts have recognized, "[i]n reviewing transferee court decisions under the law of the case doctrine, transferor courts should rarely reverse, because any widespread overturning of transferee court decisions would frustrate the principle aims of the MDL process and lessen the system's effectiveness."[10] "The law of the case doctrine 'requires attention to the special authority granted to the multidistrict transferee judge' and ensures that transferor courts respect the transferee court's decisions."[11]

### III.  DISCUSSION

Defendants do not justify their Motions by pointing to any new evidence or contradictory controlling authority. Instead, they claim the Pennsylvania Court's orders were clearly erroneous. Although the Pennsylvania Court specializes in asbestos litigation and issued its orders a year and a half before the case was transferred back to this Court, only Defendant Crane Co. alleged clear error and filed a Motion for Reconsideration before the Pennsylvania Court during that time. In this respect, it appears that, rather than becoming aware of a clear error at

---

[8] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[9] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

[10] *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009).

[11] *Id.* (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 678 (D.C. Cir. 1981)).

this later date, Defendants are attempting to appeal the Pennsylvania Court's Opinion in the hopes that this Court will decide the issues differently. However, the Court is "limited to the question of whether the transferor court's rulings were 'clearly erroneous and would work a manifest injustice.'"[12] "Certainly, this standard is far more deferential than direct appellate review."[13] This Court "should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently."[14] Each Defendant's Motion will be considered in turn below.

A.   DEFENDANT SEPCO'S MOTION

Defendant Sepco claims that the Pennsylvania Court's was clearly erroneous in two respects. First, it found that, even though Plaintiff did not timely amend the deposition transcript, which read "Setco," Mr. Anderson's deposition testimony "should be considered as identifying Sepco,"[15] Second, Sepco contends that the Pennsylvania Court should have granted summary judgment on the grounds that Plaintiff did not testify that Sepco packing contained asbestos during his deposition, and failed to identify a Sepco product after his deposition when asked to identify "each asbestos-containing product from which asbestos exposure is claimed."[16]

---

[12]*Chrysler Credit Corp.*, 928 F.2d at 1518 (quoting *Arizona v. California*, 460 U.S. 605, 619 n.8 (1983)).

[13]*Id.*

[14]*In re Ford Motor Co.*, 591 F.3d at 411.

[15]*Anderson v. Ford Motor Co.*, 2011 WL 5505456, at *1 n.1.

[16]Docket No. 262 Ex. 4.

Each of Defendant's arguments was briefed in full in its motion for summary judgment before the Pennsylvania Court. In its order, the Pennsylvania Court addressed Defendant's arguments as follows:

> SEPCO admitted that it manufactured, sold, and distributed asbestos-containing products as part of its fluid sealing lines, including gaskets and packing. Defendant asserts Mr. Anderson never identified SEPCO in his deposition. Defendant alleges that pursuant to Federal Rule of Civil Procedure 32(d)(4), since the 2007 deposition transcript was reviewed by Plaintiff's counsel to prepare Plaintiff's April 8, 2008 Notice of Exposure Evidence Against Defendants, it is too late to now contest the deposition testimony. Plaintiff contends that the name SEPCO was improperly transcribed at "Setco" in the deposition.[17]

After quoting Fed. R. Civ. P. 32(d)(4), the Pennsylvania Court found that

> in the interests of justice, Mr. Anderson's testimony should be considered as identifying SEPCO. Setco was never a defendant in this case and Setco was not present at the deposition. SEPCO has not shown that it suffered prejudice because the deposition transcript read Setco. SEPCO was present at the deposition and has not shown that it was misled into believing that Mr. Anderson did not identify SEPCO in his testimony. Mr. Anderson's deposition was videotaped, so the issue of whether Mr. Anderson identified SEPCO in his deposition can be submitted to a jury.[18]

Finally, the Court concluded that

> [i]n his deposition, Mr. Anderson testified that he worked with SEPCO packing material and that he inhaled dust when he worked with this packing material. . . . The quality of the evidence presented in this case is not strong since the only product identification evidence is from Mr. Anderson's testimony where he identified SEPCO only in response to leading questions. Also, Mr. Anderson could not provide evidence as to any specific site where he worked with SEPCO packing material. Mr. Anderson testified that he was exposed to dust when he worked with SEPCO packing material and that he inhaled this dust. Viewing the evidence in the light most favorable to Plaintiff, since Plaintiff has presented

---

[17] *Anderson v. Ford Motor Co.*, 2011 WL 5505456, at *1 n.1.

[18] *Id.*

evidence that Mr. Anderson was exposed to dust from SEPCO packing material, Plaintiff has raised a genuine issue of material fact as to whether exposure to SEPCO packing material was a substantial factor in causing Mr. Anderson's development of mesothelioma. Accordingly, Defendant's Motion for Summary Judgment is denied.[19]

*1. Identification of Sepco*

Although Plaintiff did not amend his deposition within the time requirements provided for in the Federal Rules of Civil Procedure, and although the Federal Rules do not provide for an exception in the interests of justice, the Pennsylvania Court nonetheless found that it was in the interests of justice to deem Mr. Anderson's testimony to read "Sepco" instead of "Setco." In light of all of the circumstances in this case, including the evidence that the attorneys and parties at the deposition understood "Sepco" at the deposition, the lack of any evidence that Defendant did not understand that it was identified or a party to this case, and the fact that the deposition was taken by video so that the jury will be able to judge the words spoken for themselves, this Court does not find that the Pennsylvania Court was clearly erroneous in considering Mr. Anderson's testimony as identifying Sepco.

*2. Identification of Sepco Products*

The Pennsylvania Court found that Sepco had admitted that it produced and sold asbestos containing packing and gaskets during the relevant time period. Additionally, the Pennsylvania Court found that Mr. Anderson testified to breathing in the dust from Sepco packing materials. In light of this evidence, the Court does not find that the Pennsylvania Court was clearly

---

[19]*Id.*

erroneous in concluding that Plaintiff raised a material issue of fact as to whether Sepco packing material was a substantial factor in causing Mr. Anderson's mesothelioma.

For the reasons discussed above, the Court will deny Defendant Sepco's Motion.

B.   DEFENDANT YORK'S MOTION

Defendant York argues that the Pennsylvania Court was clearly erroneous in denying York's motion for summary judgment because Plaintiff failed to provide sufficient evidence that Mr. Anderson was exposed to an asbestos-containing product manufactured by York. York argues that Mr. Anderson failed to identify any York products during his deposition. York cites to Mr. Anderson's deposition testimony, in which he stated, "I think 'York' was air compressors. I think that's what they made."[20] Mr. Anderson then further described the compressors as "refrigerated air compressors. They were full of oil and they don't work like a regular air compressor. But I think that's what they made."[21]

However, York has supplied the Court with the affidavit of a former York employee, Frederick Ziffer, who declares

> York never made or supplied any air compressors of any type. Instead, York manufactured and supplied refrigeration and air conditioning equipment, which included compressors as a component of the units. Those compressors compressed refrigerants, such as ammonia or Freon, for cooling purposes. The refrigeration and air conditioning compressors do not compress air, and could not be used for the same purpose as air compressors.[22]

---

[20]Docket No. 262-1, at 119.

[21]*Id.*

[22]Docket No. 267 Ex. 2, at 2.

8

Because York did not manufacture air compressors, York argues that Plaintiff has not raised a genuine issue of material fact as to whether Mr. Anderson was exposed to York products.

Plaintiff argues that Defendant has admitted to selling compressors, air conditioning, and refrigeration equipment, and that some of these products contained asbestos. Defendant argues that the question of whether Mr. Anderson identified a York compressor is a question of fact for a jury to decide.

These arguments were fully briefed before the Pennsylvania Court, which found that, "in its answers to interrogatories, York admitted that its 'Applied Systems Division and its predecessors sold compressors, air conditioning and refrigeration equipment.' York also admitted that some of its products contained asbestos."[23] The Pennsylvania Court then examined Defendant's arguments as follows:

> Defendant has presented evidence, through the deposition of Mr. Ziffer, that York International Corp. did not manufacture the air compressors which Mr. Anderson testified about in his deposition. In response, Plaintiff has pointed to Defendant's answers to interrogatories where Defendant admitted that York's Applied Systems Division did manufacture compressors. In applying the substantial factor test, this Court considers the factors enumerated by Judge Iwasaki in his March 12, 2006 memorandum decision. As to the nature of the disease, Mr. Anderson passed away due to his development of mesothelioma. The quality of the evidence presented in this case is not strong . . . . As to the other factors, Mr. Anderson testified that he tore gaskets off of York compressors, that dust was released into the air in this process, and that he breathed in that dust. Accordingly, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact as to whether exposure to York International Corp.

---

[23]*Anderson v. Ford Motor Co.*, 2011 WL 5505437, at *1 n.1 (quoting Docket No. 284-2, at 6).

9

asbestos-containing products was a substantial factor in causing Mr. Anderson's development of mesothelioma.[24]

Finally, the Pennsylvania Court found that "[t]he credibility of Mr. Anderson's testimony identifying York International Corp. should be submitted to a jury."[25]

As the Pennsylvania Court acknowledged, the evidence presented in this case is not strong. However, given Mr. Anderson's identification of York air compressors, the evidence that York produced compressors and refrigeration equipment, and the evidence that this equipment contained asbestos, this Court does not find that the Pennsylvania Court was clearly erroneous in holding that it was a material issue of fact whether or not Plaintiff identified York equipment that was a substantial factor in causing his mesothelioma. Therefore, the Court will deny Defendant York's Motion.

C.   DEFENDANT GOULDS' MOTION

Defendant Goulds argues that the Pennsylvania Court was clearly erroneous in relying on inadmissable evidence and in finding that Plaintiff has presented sufficient evidence that Mr. Anderson worked with Goulds' pumps for Plaintiff's claims to survive Defendant's motion for summary judgment. Defendant's argument stems from the following deposition exchange between Mr. Anderson and his counsel:

> Q.  Let's go back to pumps. What names do you recall, other than Crane, what brand names or manufacturers' names do you recall pumps you worked on during your work?
> A.  Dirco.

---

[24] *Id.*

[25] *Id.*

> MR. KEAHEY: What did you say? "Gouls"?
> A. "Goulds."
> Q. "Goulds," all right. And what was the other name you recall?[26]

Mr. Anderson then proceeded to explain the process of rebuilding pumps, including incidents of breathing in dust during the process. Mr. Anderson's responses were often in response to questions from his counsel regarding what he would do with a "Goulds' pump."[27] However, on cross examination, Mr. Anderson testified that his earlier testimony concerning his experiences rebuilding pumps was regarding pumps in general, not any specific type of pump.[28] Furthermore, Mr. Anderson was unable to identify any specific project when he worked on a Goulds' pump.[29]

Defendant argues that Mr. Anderson's identification of Goulds is inadmissible as it came as the result of a leading question from Plaintiff's counsel. Defendant further argues that since Mr. Anderson was unable to testify regarding any specific instances of working on a Goulds' pump, Plaintiff has not proffered sufficient evidence to survive a motion for summary judgment.

Plaintiff responds by arguing that although Mr. Anderson's description of the rebuilding process was about pumps in general, he did testify that he specifically worked on Goulds' pumps. Plaintiff points to the following testimony from Mr. Anderson:

> Q. How often did you work on a Goulds pump in this way?
> A. Well, it – this plant had probably twenty pumps in it and I would imagine we would rebuild one every week.

---

[26] Docket No. 262 Ex. 2, at 82.

[27] *Id.* at 82-85.

[28] Docket No. 262 Ex. 3, at 388-89.

[29] *Id.* at 389-90.

> Q. I'm not asking you just about that plant. But throughout your work career, how many times do you think you worked on a Goulds pump in the way you just described?
> A. Probably a dozen times.
> Q. And each time you worked on a Goulds pump like that, did you see dust created?
> A. Yes.
> Q. Did you breathe that dust?
> A. Yes.[30]

These arguments were fully briefed before the Pennsylvania Court. In its order, the Court focused on Defendant's argument that Mr. Anderson's deposition testimony would be inadmissible at trial, finding that

> [i]n order to determine whether Defendant's objection should be sustained, this Court must first determine whether plaintiff's counsel in fact asked leading questions. A leading question is one that suggests to the witness the answer desired by the examiner. The court must consider not just the form of the question, but also the content and context of it. Here, Plaintiff's counsel's identification of Defendant's product may have suggested to Mr. Anderson that he should testify that he worked with the product. On the other hand, the question was not leading in the traditional sense. After it was clear that Mr. Anderson could not recall the names of any other specific manufacturers, Plaintiff's counsel refreshed his memory by identifying specific manufacturers. Mr. Anderson was unable to identify specific products among the large number of products he worked with and Plaintiff's counsel merely provided names to prompt Mr. Anderson's memory of which products he worked with.[31]
>
> Even if the questions were in fact leading, the rule against the use of leading questions on direct examination is liberally construed and it is in the discretion of the trial court to allow in such evidence if the interests of justice so require. Mr. Anderson is now deceased, so the only evidence of exposure comes from the leading question Plaintiff's counsel asked Mr. Anderson. While Plaintiff should not be permitted to survive summary judgment on the basis of this leading

---

[30] Docket No. 262 Ex. 2, at 84-85.

[31] *Anderson v. Ford Motor Co.*, 2011 WL 5505458, at *1 n.1 (internal quotation marks and citations omitted).

questioning, the Court must take into account that Mr. Anderson was sickly at the time of his deposition. Also, after Plaintiff's counsel mentioned Goulds Pumps, Mr. Anderson was able to testify about his exposure to Goulds pumps. Despite the fact that Mr. Anderson responded to a leading question to identify Goulds Pumps, in the interests of justice, this Court will consider Mr. Anderson's product identification testimony.[32]

After deciding to consider the testimony, the Pennsylvania Court found as follows:

The quality of the evidence presented in this case is not strong since Mr. Anderson's identification of Goulds Pumps came after a leading question, however, as examined above, in the interests of justice, the Court will consider this evidence. Mr. Anderson could not provide testimony as to the specific locations where he worked with Goulds pumps; however, he testified that he worked with more than a dozen Goulds pumps and that every time he worked with a Goulds pumps, dust was released into the air. He testified that he breathed in this dust. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact as to whether exposure to Goulds pumps was a substantial factor in causing Mr. Anderson's development of mesothelioma. Accordingly, Defendant's Motion for Summary Judgment is denied.[33]

Having fully considered the above arguments and the Pennsylvania Court's order, and without deciding whether this Court will allow Mr. Anderson's testimony into evidence at trial, the Court does not find that the Pennsylvania Court was clearly erroneous either in considering Mr. Anderson's testimony or in finding that Plaintiff has raised a genuine issue of material fact as to whether exposure to Defendant's pumps was a substantial factor in causing Mr. Anderson's development of mesothelioma. For these reasons, Defendant Goulds' Motion will be denied.

---

[32] *Id.* (internal citations omitted).

[33] *Id.*

D.      DEFENDANT CRANE CO.'S MOTION

Unlike the other Defendants, Crane Co. filed a motion for reconsideration with the Pennsylvania Court shortly after its motion for summary judgment was denied. Making the same arguments in that motion that it now brings before this Court, Crane Co. argued that the Pennsylvania Court's order was mistakenly based on the premise that Crane Co. valves and pumps contained asbestos. Crane Co. argued that the Pennsylvania Court should find that summary judgment was appropriate because Crane Co. could not be held responsible for products "manufactured or supplied by other companies and used with Crane Co. valves post-sale,"[34] also known as the "bare metal" defense.

In its April 2011 order, the Court had found that it "need not consider the 'bare metal' defense since Plaintiff has presented evidence that Crane Co. manufactured some asbestos-containing pumps and valves. Moreover, Defendant has not cited to any Utah case recognizing the 'bare metal' defense in the asbestos context."[35] On September 26, 2012, the Pennsylvania Court denied Crane Co.'s motion for reconsideration without providing any additional reasoning.[36]

Crane Co. now brings its Motion for Partial Reconsideration and Clarification, seeking "an order determining that it is not legally responsible or liable for asbestos-containing products it did not manufacture, supply, or otherwise introduce into the stream of commerce, but which

---

[34]Docket No. 268, at 3.

[35]*Anderson v. Ford Motor Co.*, 2011 WL 5505462, at *1 n.1.

[36]Docket No. 268-13.

were placed upon its metal valves and pumps by others post-sale."[37]  Although Crane Co. states that it "is not asking this Court to reconsider the MDL Court's April 27, 2011 Order," and is only asking the Court to clarify a legal issue, it seeks the same relief and effectively requests this Court to grant it summary judgment.[38]  To the extent that Crane Co. is asking the Court to reconsider the Pennsylvania Court's finding that there was a material issue of fact as to whether Crane Co. manufactured asbestos-containing pumps or valves, it is a second Motion to Reconsider.  The Court will not engage in an attempt to define an area of Utah law that is not relevant to Crane Co.'s motion for summary judgment, and the question of Crane Co.'s liability for products it did not manufacture, supply, or otherwise introduce into the stream of commerce is only relevant if the Court does overturn the Pennsylvania Court's determination that there is a material issue of fact around the manufacture, supply, or introduction into the stream of commerce of asbestos-containing products.  As the Pennsylvania Court has already fully considered Defendant's Motion to Reconsider, this Court need not do so again.

Even were the Court to again reconsider Defendant's Motion, it would not grant it.  In its briefing, Plaintiff provided the Court with evidence that Crane Co. supplied asbestos-containing products during the relevant time period.  Plaintiff has provided the Court with the following interrogatory response from Crane Co.:

> By way of further response, to the best of Crane Co.'s present knowledge, Crane Co. placed on the market industrial valves that may have contained asbestos-containing materials within their metal structure as early as 1858.

---

[37]Docket No. 268, at 1.

[38]*Id.* at 5.

Asbestos was removed as a component from Crane Co.'s industrial valves in the mid-1980's with the exception of one specific type of valve designed for petroleum industry applications, which incorporated an asbestos component until the late 1980's or early 1990's.[39]

Considering this evidence along with the deposition testimony of Mr. Anderson in the light most favorable to Plaintiff, the Court does not find that the Pennsylvania Court's findings were clearly erroneous. For these reasons, Defendant Crane Co.'s Motion will be Denied.

## IV.  CONCLUSION

It is therefore ORDERED that Defendant Sepco Corporation's Motion for Reconsideration (Docket No. 262) is DENIED.  It is further

ORDERED that Defendant York International Corporation's Motion for Reconsideration (Docket No. 267) is DENIED.  It is further

ORDERED that Defendant Goulds Pumps' Motion for Reconsideration (Docket No. 276) is DENIED. It is further

ORDERED that Defendant Crane Co.'s Renewed Motion for Partial Reconsideration and Clarification Regarding its Motion for Summary Judgment (Docket No. 268) is DENIED.  The Court will refer the parties to a settlement conference by separate Order.

DATED July 15, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[39] Docket No. 268-3 Ex. 35, at 10.