IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| ARVA ANDERSON, | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE |
|---|---|
| Plaintiff, | |
| v. | |
| FORD MOTOR COMPANY, et al., | |
| Defendants. | Case No. 2:06-CV-741 TS |
| | District Judge Ted Stewart |

This matter is before the Court on Defendant Crane Co.'s Motion to Exclude Specific Causation Testimony from Plaintiff's Medical Causation Witness Dr. Jerrold Abraham.[1] Defendants Sepco Corporation, Flowsere Corporation, York International Corporation, Honeywell International Inc., and Gould Pumps Inc. have joined in Crane Co.'s Motion.[2] For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

This matter was initially filed in state court by Joseph Alexander Anderson, Jr., and was removed to this Court on September 1, 2006. Plaintiff's complaint alleged that Mr. Anderson had been diagnosed with asbestos-caused mesothelioma. Mr. Anderson died of mesothelioma on June 7, 2008, and his wife and the executor of his estate, Arva Anderson, was substituted as Plaintiff. On October 20, 2006, the United States of America Judicial Panel on Multidistrict Litigation issued Conditional Transfer Order 269, which transferred Plaintiff's case to the United

---

[1] Docket No. 348.

[2] Docket Nos. 350, 354, 357, 360, 368.

1

States District Court for the Eastern District of Pennsylvania. On October 12, 2012, a Clerk's Order of Conditional Remand was signed, remanding the case back to this Court for trial and severing all claims for punitive or exemplary damages.

After remand, Defendant Crane Co., joined by the other Defendants, filed a Renewed Motion to Exclude the Proposed Specific Causation Testimony from Plaintiff's Experts. On June 24, 2013, the Court granted Defendant Crane Co.'s Renewed Motion (the "June 24, 2013 Order"). In the June 24, 2013 Order, the Court excluded testimony from Plaintiff's experts—Drs. Horn and Dikman—who intended to testify "that every exposure Mr. Anderson had to an asbestos fiber contributed to the causation of his disease would imply specific causation regardless of the dose of the exposure or the type of fiber to which Mr. Anderson was exposed."[3]

The Court rejected such "every exposure" testimony, finding that it failed to meet the requirements of Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*[4] The Court noted that "not only do Plaintiff's experts lack data on the level of exposure to asbestos necessary to cause mesothelioma, they have no information on Mr. Anderson's exposure to Defendants' products, or even the type of asbestos fibers that Defendants' products may contain."[5] The Court concluded that "[t]he experts simply do not have the scientific information to allow them to testify in further detail regarding a dosage that does pose a significant risk of mesothelioma."[6]

---

[3] Docket No. 323, at 9.
[4] 509 U.S. 579 (1993).
[5] Docket No. 323, at 12.
[6] *Id.* at 13.

After the Court's June 24, 2013 Order, Plaintiff was granted leave to file an additional expert report.[7] However, Plaintiff was cautioned that "every exposure theory testimony" would not be permitted.[8]

Plaintiff retained Jerrold L. Abraham, M.D., as an expert. Dr. Abraham is a Professor of Pathology and Director of Environmental and Occupational Pathology at the State University of New York Upstate Medical University.

Dr. Abraham provided his initial report on July 23, 2013.[9] In that report, Dr. Abraham stated:

> Asbestos exposure is well known to be the cause of nearly all malignant mesotheliomas. Mr. Anderson had a history of asbestos exposure and developed a malignant mesothelioma. Based on this information I can conclude to a reasonable degree of medical certainty that Mr. Anderson's asbestos exposure was the cause of his asbestos-related pleural plaques, his asbestosis, and of his malignant mesothelioma and death. Asbestos exposure is also the cause of asbestosis, by definition.[10]

At the request of Plaintiff's counsel, Dr. Abraham provided an extended report on August 2, 2013.[11] In his extended report, Dr. Abraham considered Plaintiff's testimony concerning Plaintiff's work with specific products.[12] Dr. Abraham concluded that, if these products

---

[7] Docket No. 326, at 3.

[8] *Id.*

[9] Docket No. 348 Ex. A.

[10] *Id.*

[11] Docket No. 348 Ex. C.

[12] Dr. Abraham specifically discussed Chesterton packing, Crane valves and pumps, Goulds pumps, Durco pumps and valves, Sepco packing, and York compressors. *Id.* at 2–3.

contained asbestos, the inhalation of dust from these materials by Plaintiff "was a substantial factor in causing [Plaintiff's] mesothelioma and ultimately his death."[13]

Dr. Abraham concluded his extended report as follows:

> It is my opinion, to a reasonable degree of medical certainty, that Mr. Anderson contracted malignant mesothelioma as a result of his exposure to asbestos; and that his asbestos-caused mesothelioma was the primary cause of his death. His asbestos exposure was also, by definition, the cause of his asbestosis and of his asbestos-related pleural plaques.
> I am familiar with asbestos exposures encountered by plumbers and pipefitters during the removal and replacement of gaskets and packing materials and, in my opinion, the doses are substantial and are the type to cause mesothelioma. I have personally reviewed many cases of pipefitters who have been diagnosed with mesothelioma as a result of their exposures to asbestos-containing packing and gaskets such as the ones described by Mr. Anderson. I am also aware that it was typical during the years of Mr. Anderson's employment for industrial gaskets and packing to contain asbestos fibers. Removal and replacement of gasket and packing materials like the ones described by Mr. Anderson are known to emit respirable asbestos fibers in the range of 0.2 to 4.2 f/cc during the same installation and removal processes described by Mr. Anderson. It is also well recognized within the medical community that brief, low-level occupational exposures to asbestos are sufficient to cause mesothelioma after an appropriate latency period. Studies and case reports indicate that exposures resulting in asbestos doses of less than 0.15 f/cc/yr pose a substantially elevated risk for the development of disease, and that exposures as little as a few days can cause mesothelioma.
> Each of the exposures identified above, individually, increased Mr. Anderson's risk for developing asbestos-related disease because the doses he would likely have incurred from each of them were separately and independently within the range of doses known to cause mesothelioma. Here, with the benefit of hindsight, we know that Mr. Anderson did indeed contract mesothelioma as a result of his asbestos exposure. It is my opinion, to a reasonable degree of medical certainty, that each individual exposure described above substantially contributed to the causation of Mr. Anderson's mesothelioma and his death. It is also my opinion that each of those exposures was individually substantial based on the available data, as each was independently capable of causing mesothelioma by itself.[14]

---

[13] *Id.* at 2–3.

[14] *Id.* at 3–4 (footnotes omitted).

The parties deposed Dr. Abraham on October 15, 2013.[15] In his deposition, Dr. Abraham gave testimony consistent with the "every exposure" theory:

> Q. Would you agree that every asbestos exposure above background level was a substantial factor in the development of Mr. Anderson's mesothelioma?
> A. Yes, if there is no safe threshold, every exposure above background would have been sufficient in itself to cause the mesothelioma. If he'd only had one exposure and developed a mesothelioma that would have been sufficient to be the cause. But when there is multiple exposures then the way that's usually approached is by measuring the cumulative exposure, and the cumulative exposure then becomes the cause.
> Q. And you do agree that there is no safe asbestos exposure other than background?
> A. There is no known safe exposure. There may be a safe exposure but nobody has demonstrated one yet.
> Q. And would you agree that all of Mr. Anderson's asbestos exposure should be considered a contributing factor in the development of his malignancy?
> A. Other than his ambient background, yes.[16]

Other statements from Dr. Abraham further show his belief in the every exposure theory.[17] However, Dr. Abraham's testimony was not simply limited to this theory. Dr. Abraham agreed that in the past he had "offered an opinion that exposures to a defendant's product caused the plaintiff's mesothelioma based solely on a hypothetical that the defendant's product contained asbestos or released it into the air and the plaintiff was exposed at above background levels from that product."[18] However, that was only because he was not provided all

---

[15] Docket No. 348 Ex. B.

[16] *Id.* at 21:3–25.

[17] *Id.* at 22:19–24 ("[T]here is no known safe threshold of exposure for mesothelioma. So then it follows that any exposure somebody has has the potential to be the only cause of their mesothelioma and also becomes part of the contributing cause or causes to their mesothelioma.").

[18] *Id.* at 23:11–16.

of the detail of the plaintiff's exposure. Dr. Abraham testified that "[i]n this case I was given more detail than I'm usually given."[19]

Dr. Abraham admitted that he would be willing to provide a causation opinion "based on a hypothetical where you assumed that a defendant's product released asbestos, the plaintiff breathed it in, and therefore that exposure was a substantial contributing factor in causing the disease."[20] However, a review of his extended report reveals that Dr. Abraham's proposed testimony is based upon more than just a hypothetical. Rather, Dr. Abraham examined Mr. Anderson's testimony concerning his work with certain products, which could have released a certain level of fibers. Based on this testimony, and studies showing that exposures above a certain level pose a substantially elevated risk for developing mesothelioma, Dr. Abraham was able to conclude that each of the exposure described by Plaintiff contributed to the causation of the disease.

## II. DISCUSSION

Defendant first argues that the every exposure theory does not comport with Rule 702 and *Daubert*. For substantially the same reasons stated by the Court previously, the Court agrees. But this does not end the inquiry.

Defendant next argues that Dr. Abraham believes the every exposure theory and will testify on the every exposure theory. This argument, however, is an oversimplification of Dr. Abraham's extended report and his deposition testimony.

---

[19] *Id.* at 23:18–19.
[20] *Id.* at 24:21–25.

Dr. Abraham's report is based on portions of Mr. Anderson's deposition. In his deposition, Mr. Anderson testified about working with specific products. Dr. Abraham relies upon other scientific evidence that has found that the work Mr. Anderson described releases a certain level of respirable asbestos fibers. Dr. Abraham further relies on studies showing that asbestos doses of a certain amount pose a substantially elevated risk for the development of disease. Based upon this evidence, Dr. Abraham was able to reach the conclusion "that each individual exposure described [by Mr. Anderson] substantially contributed to the causation of Mr. Anderson's mesothelioma and his death. It is also my opinion that each of those exposures was individually substantial based on the available data, as each was independently capable of causing mesothelioma by itself."[21] This opinion does not suffer from the same flaws as the opinions of Drs. Horn and Dikman. Those opinions were deficient because they were premised on a lack of information, while Dr. Abraham's opinion is clearly based on Plaintiff's testimony in combination with other scientific evidence.

Defendant tries to assert that Dr. Abraham will testify as to the every exposure theory. However, Plaintiff has specifically stated that Dr. Abraham did not rely on that theory "and will not be relying on that theory for any testimony he gives at trial."[22] The Court will rely on the representation that Dr. Abraham will not provide testimony consistent with the every exposure theory.

Defendant also argues that the Court should disregard Dr. Abraham's report because it contradicts his deposition testimony. For the same reasons set forth above, the Court must reject

---

[21] Docket No. 348 Ex. C, at 4.
[22] Docket No. 363, at 10–11.

this argument. While Dr. Abraham may believe the every exposure theory, his extended report and his ultimate conclusions in this case rest on more than this theory. Further, there is nothing inconsistent about the statements Dr. Abraham made during his deposition and the conclusions he reaches in his extended report.

Finally, Defendant argues that Dr. Abraham should not be permitted to testify about fiber release levels from asbestos-containing products. Defendant argues that Dr. Abraham is not an industrial hygienist and is not qualified to testify about such topics. Even if the Court accepts Defendant's argument, the Court need not exclude Dr. Abraham's testimony. Federal Rule of Evidence 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." As Dr. Abraham stated in his deposition, he has reviewed the articles he cited concerning fiber release levels prior to his involvement in this case.[23] Thus, Dr. Abraham can base his opinion concerning fiber release levels based on facts or data of which he has been made aware.

In their joinders in Defendant Crane Co.'s Motion, the other Defendants raise various argument to exclude Dr. Abraham's testimony. However, "as long as a logical basis exists for an expert's opinion . . . the weaknesses in the underpinnings of the opinion[ ] go to the weight and not the admissibility of the testimony."[24] The Court finds that the arguments raised by Defendants go to the weight, if any, to be given to Dr. Abraham's opinion, rather than its admissibility. Therefore, the Court will not exclude Dr. Abraham's testimony based on those grounds.

---

[23] Docket No. 348 Ex. B, at 44–45.

[24] *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996) (citations omitted) (internal quotation marks omitted).

## III. CONCLUSION

It is therefore

ORDERED that Defendant Crane Co.'s Motion to Exclude Specific Causation Testimony from Plaintiff's Medical Causation Witness Dr. Jerrold Abraham (Docket No. 348) is DENIED.

DATED this 28th day of February, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge